Anna Y. Park, SBN 164242
anna.park@eeoc.gov
Nakkisa Akhavan, SBN 286260
nakkisa.akhavan@eeoc.gov
Taylor Markey, SBN 319557
taylor.markey@eeoc.gov
Sophie N. Tarazi, SBN 329721
sophia.tarazi@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 785-3008
Facsimile: (213) 894-1301
E Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiff,<br><br>   vs.<br><br>SWAMI'S 101 LLC d/b/a SWAMI'S CAFE; HONEY'S BISTRO, LLC; SWAMI'S VISTA LLC; SWAMI'S CARLSBAD LLC; SWAMI'S ESCONDIDO LLC; SWAMI'S OCEANSIDE LLC; SWAMI'S LA MESA LLC; SWAMI'S DOWNTOWN LLC; SWAMI'S NORTH PARK LLC; SWAMI'S HILLCREST LLC; AND DOES 1-10, INCLUSIVE,<br><br>        Defendants. | Case No.: '23CV0902 LAB NLS<br><br>COMPLAINT - TITLE VII<br>• Sexual Harassment<br>• Retaliation<br><br>*42 U.S.C. §§ 2000e, et seq.*<br><br>JURY TRIAL DEMAND |

### NATURE OF THE ACTION

This is an action brought by Plaintiff United States Equal Employment Opportunity Commission (the "Commission") under Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII") to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to the charging party ("Charging Party") and a class of similarly aggrieved individuals who were adversely affected by such practices. As alleged with greater particularity in paragraphs 28 through 44 below, the Commission alleges that Swami's 101 LLC d/b/a Swami's Café ("Swami's"); Swami's Vista LLC; Swami's Carlsbad LLC; Swami's Escondido LLC; Swami's Oceanside LLC; Swami's La Mesa LLC; Swami's Downtown LLC; Swami's North Park LLC; Swami's Hillcrest LLC; and Honey's Bistro, LLC (collectively, "Defendants") subjected Charging Party and a class of aggrieved individuals to sexual harassment resulting in tangible employment action(s), severe or pervasive sexual harassment, and/or hostile work environment on the basis of sex (female); and subjected Charging Party and class members to retaliation.

### JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.    The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Southern District of California.

### PARTIES

3.    Plaintiff Equal Employment Opportunity Commission is an agency of the United States of America charged with administration, interpretation, and enforcement of

Title VII, and is expressly authorized to bring this action by §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant Swami's 101 LLC d/b/a Swami's Café has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

5.      At all relevant times, Swami's Vista LLC has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

6.      At all relevant times, Swami's Carlsbad LLC has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

7.      At all relevant times, Swami's Escondido LLC has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

8.      At all relevant times, Swami's Oceanside LLC has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

9.      At all relevant times, Swami's La Mesa LLC has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

10.      At all relevant times, Swami's Downtown LLC has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

11.      At all relevant times, Swami's North Park LLC has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

12.     At all relevant times, Swami's Hillcrest LLC has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

13.     At all relevant times, Honey's Bistro has continuously been a limited liability company doing business in the State of California and the County of San Diego and has continuously had at least fifteen (15) employees.

14.     At all relevant times, each Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(1)(b), (g), and (h).

15.     Defendants Swami's, Swami's Vista LLC, Swami's Carlsbad LLC, Swami's Escondido LLC, Swami's Oceanside LLC, Swami's La Mesa LLC, Swami's Downtown LLC, Swami's North Park LLC, and Swami's Hillcrest LLC own and operate several casual, counter-service restaurants in California, and Honey's Bistro owns and operates a casual, table-service restaurant in California.

16.     All of the acts and failures to act alleged herein were duly performed and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

17.     At all relevant times since at least 2019, Defendants have been collectively operating as a direct employer, joint employers, and/or an integrated enterprise. Specifically, Defendants have common management and ownership, centralized control of labor operations, and interrelation of operations because Defendants:

a.  operate under the common management and financial control of Owner Jaime Osuna;

b.  share centralized oversight and supervision by Operations Manager Hulises Contreras;

c.  share centralized control of labor operations at the same address where Defendants are all incorporated, except that Swami's Downtown is incorporated at its physical location in Downtown San Diego;

d.  share human resources functions such as hiring and payroll, including contracting for use of the services of the same third-party payroll company; and

e.  share employees.

18.  Plaintiff is ignorant of the true names and capacities of each Defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE Defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE Defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

## ADMINISTRATIVE PROCEDURES

19.  More than thirty days prior to the institution of this lawsuit, the Charging Party filed a charge of discrimination with the Commission alleging violations of Title VII by Defendants.

20.  Defendants received a copy of the charge(s) of discrimination, and participated in the Commission's investigation, including by responding to requests from the Commission for a position statement, information, and documents.

21.  On July 6, 2022, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that Defendants violated Title VII. The

Commission invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

22.     The Commission engaged in conciliation communications with Defendants in order to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination on terms acceptable to the Commission.

23.     On August 25, 2022, the Commission issued to Defendants an Amended Letter of Determination naming additional related entities.

24.     Following the reissuing of the Letter of Determination, the Respondents indicated they would like to continue conciliation discussions, and the Commission agreed.

25.     The Commission engaged in further conciliation communications with Defendants, but the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

26.     On or about January 12, 2023, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

27.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

28.     Since at least 2019, Defendants have had a pattern of hiring teenage girls as young as 16 years old based on their appearance and vulnerability, using manipulative tactics to subject them to a highly sexualized work environment in which Swami's male manager, John Nolan, would sexually harass them daily. Manager Nolan created a hostile work environment by, among other things, inappropriately touching and making sexual comments to young female employees, as well as by attempting to have sexual relationships with young female employees. As a supervisor, he subjected the same employees he harassed to tangible employment actions by, among other things, demonstrating favoritism in the terms and conditions of employment towards employees

who were forced to comply with his advances and retaliating against those who refused. But the hostile work environment was not limited to the Swami's 101 Encinitas location at which Manager Nolan worked; female employees throughout Swami's locations were also subjected a hostile work environment and provided with no recourse by the company to prevent and correct the harassment they endured.

29.    Since at least 2019, Defendants have engaged in unlawful employment practices in violation of §§ 703(a)(1) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a), by subjecting Charging Party and similarly aggrieved employees to ongoing, unwelcome, severe or pervasive sexual harassment, and creating and maintaining an offensive, abusive, and intimidating hostile work environment because of sex (female).

30.    Manager Nolan directly supervises all the young, female waitresses at Swami's 101 and uses his power as their supervisor to reward or punish them based on their responses to his sexual advances. Manager Nolan's favoritism towards female employees who were manipulated or forced to comply with his sexual advances stands in stark contrast to his adverse employment actions, including retaliation, against those who resist those advances. For example:

   a.    Some female employees who were coerced to put up with Manager Nolan's advances receive gifts from Nolan, including expensive objects—such as bicycles, surfboards, alcohol, and illegal drugs—and large amounts of cash disproportionate to the tips they earned, are scheduled to work on more lucrative shifts, or are permitted to arrive hours late to work or leave early while receiving the same pay.

   b.    In contrast, female employees who outright refuse to put up with Manager Nolan's behavior experience tangible employment actions such as being removed from the work schedule, fired, physically intimidated, or unfairly and incorrectly reprimanded for their work performance, including being yelled at in front of customers.

c.   Female employees are deterred from standing up to Manager Nolan because of his volatile reactions. In some cases, Manager Nolan has resorted to physical violence when he is displeased with female employees, such as when he became angry with a claimant and threw heavy receipt rolls and cardboard boxes at her.

31.   Defendants maintained a hostile work environment in which Charging Party and a class of similarly aggrieved individuals were subjected to frequent, ongoing, inappropriate, unwelcome, and offensive conduct of a sexual nature by Manager Nolan and other coworkers. For example:

a.   Charging Party, a teenaged female employee, began working for Defendants in mid-2020 as a waitress. She worked for Defendants until September 28, 2020, when she was terminated after she complained of being subjected to sexual harassment by Manager Nolan.

b.   Manager Nolan made frequent and graphic comments to Charging Party and class members, including but not limited to the following: referring to young female employees as "angels," "dolls," "sexy," "cute," "heartbreakers," and "hot" or commenting about their body parts (*e.g.* "she has such a nice ass") throughout the day as they worked in the restaurant, oversharing information about his sexual activities, including his sexual relationship with a 19-year-old employee, and frequently making sexual comments about customers.

c.   Manager Nolan also engaged in other inappropriate and unwanted sexual behavior with Charging Party and class members including, but not limited to: touching female employees on their waists, lower backs or shoulders and inviting female employees, including underage employees, to sleep over and/or live full-time at his home.

d.    Manager Nolan also created a hostile work environment by having or attempting to have sexual relationships with employees, demonstrating favoritism towards employees who felt forced to comply with his advances and retaliating against those who did not, as described herein.

e.    Claimants and other female employees also experienced physical sexual harassment from other coworkers such as cooks at other Swami's locations, such as, among other locations, Swami's Vista, and a dishwasher at Honey's Bistro, who would come up behind waitresses and grab them.

32.    Charging Party and similarly aggrieved individuals complained about the harassment numerous times throughout the relevant period, but Defendants failed to take adequate steps to address the sexual harassment and misconduct.

33.    Since at least 2019, Defendants knew or should have known of the hostile work environment. The sexually charged and inappropriate actions and comments by the male manager were ubiquitous, open, frequent, and consistent in nature. For example, Swami's owner, Jaime Osuna, was present when Manager Nolan referred to a seventeen-year-old new hire as a "tall beautiful Venezuelan" and leered at her; instead of addressing the inappropriate comment, he joined in staring her up and down.

34.    Defendants provided no training to Charging Party and claimants about sexual harassment and offered no information about how to make a complaint. In fact, Manager Nolan represented to employees that he was the owner of Swami's 101, and many claimants were unaware there was anyone above him in the organization to whom they could report harassment; even those who were aware Owner Osuna owned the chain of Swami's restaurants did not have his contact information. The company did not have Human Resources but had Operations Manager Hulises Contreras carry out all HR functions; the company never informed its employees of this and did not make employees

aware of any complaint mechanism other than complaining to their supervisors, often the harassers.

35.   Despite these obstacles, Charging Party and other similarly aggrieved employees complained verbally and in writing to their manager, upper management, and even Owner Osuna about the harassment and hostile work environment they endured.

36.   Despite having actual and constructive notice of the harassment described herein, Defendants failed and refused to take prompt and appropriate action to stop the harassment and the resulting hostile work environment.

37.   Defendants did not properly handle the complaints made by Charging Party and similarly aggrieved employees. For instance, Manager Nolan retaliated against Charging Party when she stood up to his harassment by removing her from the work schedule and firing her. Further, after claimants were harassed by coworkers such as cooks and dishwashers, they complained to Operations Manager Contreras and Owner Osuna, who either took no action or suggested that the claimant making a complaint work at a different location, rather than addressing the harassment.

38.   Defendants failed to monitor the workplace, failed to properly investigate and respond to complaints, and failed to implement necessary remedial measures to end the harassment.

39.   As a result of Defendants' failures to take prompt and effective remedial measures, the sexual harassment continued unabated. The harassment was unwelcome and sufficiently severe or pervasive to alter the terms and conditions of the Charging Party's and other aggrieved individuals' employment and created a hostile work environment.

40.   Defendants' failures to take prompt and effective remedial measures also caused some claimants to quit their employment to avoid continuing to work in the hostile work environment perpetuated by Defendants.

41.    Defendants' unlawful practices also included subjecting Charging Party and similarly aggrieved individuals to retaliation for complaining about the harassment and engaging in protected activity. For example:

    a.    Numerous aggrieved employees opposed the sexual harassment to which they were subjected by verbally complaining to management, including Manager Nolan. Charging Party complained to Nolan that it was inappropriate for him to call her "baby" and "sexy," and as a result of her protected activity, he retaliated against Charging Party by removing her from the schedule and firing her. Other class members were also removed from the schedule or fired in retaliation after complaining about harassment.

    b.    Moreover, following initiation of the Commission's investigation into the allegations giving rise to this action, many of these aggrieved employees were subjected to threats by Manager Nolan, who texted employees that they would be "in trouble" if they cooperated with the investigation. Nolan also texted employees that Charging Party is "a liar and mean disturbed person," called the Commission's investigation Charging Party's "attempt to extort swamis café," and asked for "anyone who will agree to testify against [Charging Party] please forward that in writing, it will shut Her down."

42.    The effect of the practices complained of above has been to deprive Charging Party and other aggrieved employees of equal employment opportunities and otherwise adversely affect their working conditions because of their sex.

43.    The unlawful employment practices complained of above were intentional.

44.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Charging Party and similarly aggrieved employees.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practices in violation of Sections 703(a) and 704(a) of Title VII.

B.    Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for female employees and which eradicate the effects of its past and present unlawful employment practices and to ensure that it does not engage in further unlawful practices in violation of Sections 703(a) and 704(a) of Title VII.

C.    Order Defendants to make the Charging Party and the class of similarly aggrieved individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above, in amounts to be determined at trial.

D.    Order Defendants to make the Charging Party and the class of similarly aggrieved individuals whole by providing compensation for past and future non-pecuniary losses, pursuant to Title VII, resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

E.    Order Defendants to pay the Charging Party and the class of similarly aggrieved individuals punitive damages, pursuant to Title VII, for its malicious or reckless conduct as described above, in amounts to be determined at trial.

F.    Order Defendants to make Charging Party and the class of similarly aggrieved individuals whole by providing appropriate backpay with interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

H.    Award the Commission the costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: May 17, 2023                    Respectfully Submitted,

GWENDOLYN YOUNG REAMS,
Acting General Counsel

CHRISTOPHER LAGE,
Deputy General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 "M" Street, N.E.
Washington, D.C. 20507

By:    */s/ Anna Y. Park*
ANNA Y. PARK
Regional Attorney
Los Angeles District Office
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION